## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | |
|---|---|
| **BETTY J. FUGATE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 5:05-0474** |
| ) | |
| **JO ANNE B. BARNHART,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Claimant's application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case was referred to the undersigned United States Magistrate Judge by Standing Order to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). (Doc. No. 3.) Presently pending before the Court is the Plaintiff's Brief in Support of Complaint (Doc. No. 10.) and the Defendant's Motion for Judgment on the Pleadings. (Doc. No. 11.)

The Plaintiff, Betty J. Fugate (hereinafter referred to as "Claimant"), filed an application for DIB on November 18, 2002 (protective filing date), alleging disability as of August 1, 2001, due to depression, high blood pressure, back problems, stomach problems, knee problems, and migraines. (Tr. at 25, 61-63, 86.) The claim was denied initially and upon reconsideration. (Tr. at 44-47, 50-52.) On November 7, 2003, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 53.) A hearing was held on May 6, 2004, before the Honorable John T. Yeary. (Tr. at 689-731.) On July 21, 2004, the ALJ issued a decision denying Claimant's claim for benefits. (Tr. at 24-32.) The ALJ's decision became the final decision of the Commissioner on April 19, 2005,

when the Appeals Council denied Claimant's request for review. (Tr. at 5-18.) On June 9, 2005, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. § 404.1520(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2004). The Commissioner must show two things:

(1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 25.) Under the second inquiry, the ALJ found that Claimant was status post two lumbar laminectomies and status post hernia repairs, which were considered severe impairments. (Tr. at 27, 31.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or medically equal the level of severity of any listing in Appendix 1. (Tr. at 27-28.) The ALJ then found that Claimant had a residual functional capacity for sedentary work and could never climb ladders, ropes, or scaffolds and could never crawl; could occasionally climb ramps and stairs, balance, stoop, kneel, and crouch; and should avoid concentrated exposure to extreme cold, vibration, and hazards. (Tr. at 29.) As a result, Claimant could not return to her past relevant work. (Tr. at 30.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ nonetheless concluded that Claimant could perform jobs such as a finisher, a sorter, and a bench assembler, all of which existed in significant numbers in the regional and national economies. (Tr. at 30-31.) On this basis, benefits were denied. (Tr. at 31-32.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct

a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals that the decision of the Commissioner is not supported by substantial evidence.

Claimant's Background

Claimant was born on July 21, 1954, and was 49 years old at the time of the administrative hearing. (Tr. at 25, 30, 61, 694.) Claimant had an eleventh grade education. (Tr. at 25, 92, 699.) In the past, she worked as a home health aide and a commercial cleaner. (Tr. at 25, 699, 701-02.)

The Medical Record

The Court has considered all evidence of record, including the medical evidence and will discuss it below as it relates to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in failing to (1) consider the severity of Claimant's knee impairment in combination with her obesity, and (2) obtain the testimony of a medical advisor to determine Claimant's residual functional capacity as of March 31, 2002. (Pl.'s Br. at 2.) The Commissioner asserts that the ALJ's decision is supported by substantial evidence and that Claimant's arguments are without merit.

4

1. <u>Obesity</u>.

The Court first addresses Claimant's argument that the ALJ failed to consider her knee impairment in combination with her obesity. (Pl.'s Br. at .) Claimant essentially argues that the ALJ failed to consider her obesity at steps two through five of the sequential analysis. She avers that medical evidence demonstrated that her knee impairment imposed more than minimal limitations on her ability to work prior to her date last insured, March 31, 2002, and that the ALJ failed to consider the impact of her obesity on her knee impairment in finding that the knee impairment did not impose more than minimal limitations. (Pl.'s Br. at 7, 8-10.) Specifically, Claimant notes that her treating physician found a correlation between her obesity and knee pain. (Pl.'s Br. at 8.) The Commissioner asserts that the evidence for the relevant period of time does not establish that Claimant's knee impairments were disabling. (Def.'s Br. at 6-7.) Although Claimant's physician mentioned her weight, the Commissioner argues that he did not identify any limitations on her ability to function. (Def.'s Br. at 7.) Nevertheless, the Commissioner asserts that the ALJ compensated for any limitation Claimant may have had from her knees when he found that she retained the residual functional capacity to perform work at the sedentary exertional level. (Def.'s Br. at 7-8.)

"Obesity is a risk factor that increases an individual's chances of developing impairments in most body systems. It commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems." Social Security Ruling ("SSR") 02-1p, 2000 WL 628049, *2. This Ruling provides guidance concerning the evaluation of obesity in disability claims and discusses the consideration of obesity at different levels in the sequential analysis. Pursuant to SSR 02-1p, an ALJ must consider obesity in determining whether a claimant has a medically determinable impairment that is severe (step two), whether the impairment meets

5

or equals the requirements of a Listing (step three), and whether the impairment prevents the claimant from performing past relevant work (step four) and other work that exists in significant numbers in the national economy (step five). SSR 02-1p at *3. The Regulations specifically require the ALJ to consider the effects of obesity combined with the claimant's other impairments at steps three and four. Section 1.00(Q) of the Listing of Impairments states as follows:

> Effects of obesity. Obesity is a medically determinable impairment that is often associated with disturbances of the musculoskeletal system, and disturbance of this system can be a major cause of disability in individuals with obesity. The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.

20 C.F.R. Pt. 404 Subpt. P, App. 1 (2004).

In the instant case, the ALJ found that Claimant's status post two lumbar laminectomies and status post hernia repairs were severe impairments. (Tr. at 27.) Concerning Claimant's knees, the ALJ noted the medical evidence after March 31, 2002, and found that her impairment was not severe prior to the date her last insured status expired. (Tr. at 26.) The evidence regarding Claimant's knees for the relevant period from the alleged onset date, August 1, 2001, to the date last insured, March 31, 2002, shows that in April and May 2001, Claimant complained of increased bilateral knee pain. (Tr. at 463, 465, 469.) Douglas King, M.D., Claimant's treating physician, noted on April 3, 2001, that her knees were tender, without swelling or effusion. (Id.) He diagnosed bilateral osteoarthritis and ordered x-rays of her knees and physical therapy for two weeks with three sessions each week. (Tr. at 464, 468-69.) The x-rays of Claimant's left knee revealed "very minimal or early degeneration. . . [with] slight relative narrowing of the medial compartment." (Tr. at 157.) The x-rays of the right knee however, revealed "[m]ild relative narrowing of medial joint space" "with

6

some narrowing of the medial compartment" and "very early changes of hypertrophic spurring at medial margin of tibial plateau." (Tr. at 156.) Claimant requested that Dr. King refer her to someone who could examine further her complaints of pain. (Tr. at 469.) In a letter of referral dated April 9, 2001, to Dr. Kent Kirkland, Dr. King stated: "Betty is one of the few patients that managed to gain weight after she had her stomach stapled! She has complained for a long time about both knees" with the pain being greater on the right knee.[1] (Tr. at 467.)

On May 5, 2001, Claimant was examined in the emergency room for an injury to her right knee. (Tr. at 465.) On examination, it was determined that she had fluid on the knee and could not flex greater than thirty degrees. (Id.) On May 11, 2001, Dr. King noted that Claimant had regained full range of motion of her knee, but had crepitus. (Tr. at 463.) Nevertheless, by December 21, 2001, Claimant continued to complain of bilateral knee pain and swelling. (Tr. at 453.) On November 20, 2002, after Claimant's insured status had expired, she underwent a further x-ray of her right knee. (Tr. at 307.) This x-ray revealed "narrowing of the medial compartment of the tibial-femoral joint and of the patella-femoral joint indicative of early degenerative osteoarthritis." (Id.) An MRI scan conducted on May 6, 2003, demonstrated degenerative change, consisting of small joint effusion, soft tissue edema, mild to moderate chondromalacia patella, reduction in medial joint space, subchondral bone edema, medial meniscus, an extensive tear involving the medial meniscus, and an associated tear. (Tr. at 276.) Dr. Clare D. Weisman, M.D., conducted on May 28, 2003, a right knee arthroscopy, and on October 10, 2003, a total right knee replacement was scheduled. (Tr. at 394.)

---

[1] Dr. King's notes indicate that Claimant was unable to make her appointment with Dr. Kirkland, and therefore, cancelled and rescheduled. (Tr. at 467.) The administrative record however, does not contain any records from Dr. Kirkland.

The ALJ made no mention or finding regarding the severity of Claimant's obesity. In Rutherford v. Barnhart, 399 F.3d 546, 552-53 (3d Cir. 2005), the claimant argued that the case should be remanded because the ALJ failed to consider her obesity. The United States Court of Appeals for the Third Circuit affirmed and refused to remand, noting that the claimant did not mention obesity as a condition that contributed to her inability to work and that remand would not affect the outcome of the case. See id. at 553. The Court concluded that the ALJ was alerted by the record that obesity could be a factor, but that the claimant essentially failed to pursue this avenue by failing to indicate how it limited her abilities. Id. The Court quoted and followed the reasoning of a Seventh Circuit decision, Skarbek v. Barnhart, 390 F.3d 500 (7th Cir. 2004) (per curiam):

> An ALJ is required to consider impairments a claimant says he has, or about which the ALJ receives evidence. Although Skarbek did not specifically claim obesity as an impairment (either in his disability application or at his hearing), the references to his weight in his medical records were likely sufficient to alert the ALJ to the impairment. Despite this, any remand for explicit consideration of Skarbek's obesity would not affect the outcome of this case. Notably, Skarbek does not specify how his obesity further impaired his ability to work, but speculates merely that his weight makes it more difficult to stand and walk. Additionally, the ALJ adopted the limitations suggested by the specialists and reviewing doctors, who were aware of Skarbek's obesity. Thus, although the ALJ did not explicitly consider Skarbek's obesity, it was factored indirectly into the ALJ's decision as part of the doctors' opinions.

Rutherford, 399 F.3d at 546 (quoting Skarbek, 390 F.3d at 504).

Similar to the facts of Rutherford and Skarbek, in the instant case, Claimant did not specifically claim obesity as an impairment. (Tr. at 25, 61-63, 86.) Nevertheless, SSR 02-1p requires an ALJ to consider obesity and its effects together with the underlying impairments at steps two through five of the sequential analysis, even if the claimant does not allege obesity as an impairment. See SSR 02-1p at * 3; see also Clifford v. Apfel, 227 F.3d 863, 873 (7th Cir. 2000) (finding that although the claimant did not allege obesity in her application for disability benefits, "the evidence

8

should have alerted the ALJ that [the claimant] had another relevant impairment that could contribute to the cumulative effect of her other impairments."). If the obesity is apparent from the medical evidence of record, then the ALJ is presumed to have received notice of the obesity. Id. Although there is no specific level of weight, body mass index ("BMI"), or descriptive term for obesity which equates obesity with a severe impairment, the National Institute of Health has established Clinical Guidelines which recognize three levels of obesity: "Level I includes BMIs of 30.0-34.9. Level II includes BMIs of 35.0-39.9. Level III, termed 'extreme' obesity and representing the greatest risk for developing obesity-related impairments, includes BMIs greater than or equal to 40." SSR 02-1p at *2. Adults with a BMI of 25-29.9 are considered "overweight," and those adults with a BMI of 30.0 or greater are described as "obesity." Id. The medical record reveals that between August 1, 2001, and March 31, 2002, Claimant was 5'5" in height and weighed anywhere from 239.4 pounds (Tr. at 446.) to 248.6 pounds. (Tr. at 459.) On January 22, 2002, Dr. Mark W. Puls, M.D., noted that Claimant was "very obese," having lost and regained eighty pounds. (Tr. at 203.) Additionally, on March 26, 2002, she was discharged from Alpena General Hospital with several diagnoses, including obesity. (Tr. at 212.) The undersigned notes that on October 7, 2002, Claimant, weighing approximately 233 pounds, was diagnosed by Dr. Marcel G. Lambrechts as "morbid obesity, BMI of 36." (Tr. at 317.) Thus, Claimant was between Level II and Level III obesity during the relevant period of time. Accordingly, the undersigned finds that there were sufficient references to Claimant's weight and height in the medical records to have placed the ALJ on notice of Claimant's obesity.

Another similarity to the Rutherford and Skarbek cases is that the ALJ in the instant matter also relied on the residual functional capacity assessments suggested by the consulting and reviewing physicians who were aware of Claimant's obesity. (Tr. at 29.) The ALJ specifically relied

on the physical residual functional capacity assessments conducted by Drs. Rafael A. Gomez, M.D., and Marcel G. Lambrechts, M.D. (Tr. at 29, 266-74, 317-25.) Both physicians made secondary diagnoses of "morbid obesity" and opined that Claimant could perform sedentary work, limited to occasional stooping, kneeling, and crouching, and no climbing, especially on the left. (Tr. at 266-68, 317-19.) The Commissioner thus argues that the ALJ indirectly considered the effects of Claimant's obesity on her knee impairment(s). As the Claimant argues however, the facts of the instant case are distinguishable from the circumstances of Rutherford and Skarbek. Contrary to the facts of those two cases, medical evidence in the instant matter suggests a correlation between Claimant's obesity and knee impairment. (Tr. at 467.) According to SSR 02-1p, obesity increases the risk of developing certain impairments such as osteoarthritis. SSR 02-1p at *3. The undersigned notes a further possible correlation between Claimant's obesity and history of hernias. On January 22, 2002, Dr. Puls noted that because of Claimant's 80 pound weight gain, together with her history of multiple hernias, he could not guarantee that she would never get another hernia. (Tr. at 203.) Dr. Puls advised Claimant "to try to lose weight to prevent this from happening again in the future." (Id.) Additionally, Dr. Gomez opined in his physical residual functional capacity assessment, which was relied upon by the ALJ, that Claimant "had several significant medical problems from morbid obesity." (Tr. at 271.) The ALJ accorded no significant weight to the opinion of Dr. King, Claimant's then treating physician, finding that his opinion was not supported by his clinical notes. (Tr. at 29.) Dr. King's progress notes however, directly tracked Claimant's weight fluctuations and her complaints of pain in her knees. (Tr. at 443-679.)

>The Social Security Regulations provide that:
>
>In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis

10

>of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

20 C.F.R. §§ 404.1523, 416.923 (2004); see also SSR 85-28. Social Security Ruling 96-8p requires an ALJ to consider the limitations of all impairments, both severe and non-severe impairments. SSR 96-8p, 1996 WL 374184, *5. Where there is a combination of impairments, the issue "is not only the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful activity." Oppenheim v. Finch, 495 F.2d 396, 398 (4th Cir. 1974). The ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity. Id. The cumulative or synergistic effect that the various impairments have on claimant's ability to work must be analyzed. DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983.)

Based on the foregoing, the undersigned finds that the ALJ did not consider whether the combination of Claimant's knee impairment and obesity constituted a severe impairment at step two, whether her obesity contributed to finding a listing-level impairment at step three, whether her obesity and symptoms of fatigue affected the residual functional capacity assessment at step four, or whether her obesity prevented her from working in the national economy at step five. The Court cannot assume that the ALJ indirectly considered Claimant's obesity by adopting the opinions of Drs. Gomez and Lambrechts, who noted her obesity in their RFC assessments, in the absence of a finding that the ALJ considered her obesity as an impairment. When an ALJ fails to explain his decision, it is "simply impossible to tell whether there was substantial evidence to support the determination." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1996). The ALJ must accompany

11

his decision with sufficient explanation to allow a reviewing court to determine whether the Commissioner's decision is supported by substantial evidence. "[T]he [Commissioner] is required by both the Social Security Act, 42 U.S.C. § 405(b), and the Administrative Procedure Act, 5 U.S.C. § 557(c), to include in the text of [his] decision a statement of the reasons for that decision." Cook v. Heckler, 783 F.2d at 1172. The ALJ's "decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge . . . ." Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985). Accordingly, the undersigned finds that in view of the noted correlations between Claimant's obesity and other physical impairments, the ALJ's decision is not supported by substantial evidence.

2. Medical Expert.

Claimant also argues that the ALJ erred in not eliciting testimony from a medical expert "concerning the likely progression of [Claimant's] arthritis of the right knee . . . to determine whether the condition was severe before March 31, 2002." (Pl.'s Br. at 11.) Citing Bailey v. Chater, 68 F.3d 75, 79 (4th Cir. 1995), Claimant further asserts that medical expert testimony was required because the onset of disability date had to be inferred from the medical record. (Pl.'s Br. at 10.) The Commissioner asserts that the Bailey case is inapplicable because the onset of disability was neither ambiguous, nor had to be inferred from the medical evidence. (Def.'s Br. at 8.) Rather, the Commissioner asserts that Claimant consistently alleged an onset of disability of August 1, 2001, which date was utilized by the ALJ. (Id.) The Commissioner further asserts that the medical evidence presented a complete chronology of Claimant's condition throughout the relevant period of time and medical expert testimony therefore, was not needed. (Id.)

In Cook v. Heckler, the Fourth Circuit noted that an ALJ has a "responsibility to help develop the evidence." Cook v. Heckler, 783 F.2d at 1173. The court stated that "[t]his circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely on evidence submitted by the claimant when that evidence is inadequate." Id. The Court explained that the ALJ's failure to ask further questions and to demand the production of further evidence about the claimant's arthritis claim, in order to determine if it met the requirements in the listings of impairments, amounted to a neglect of his duty to develop the evidence. Id.

Nevertheless, it is Claimant's responsibility to prove to the Commissioner that he is disabled. 20 C.F.R. § 416.912(a) (2004) (stating that "in general, you have to prove to us that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s).") Thus, Claimant is responsible for providing medical evidence to the Commissioner showing that she has an impairment. Id. § 416.912(c). The Regulations provide that: "You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled." § 416.912(c)(2004.) In Bowen v. Yuckert, the Supreme Court noted:

> The severity regulation does not change the settled allocation of burdens of proof in disability proceedings. It is true . . . that the Secretary bears the burden of proof at step five . . . [b]ut the Secretary is required to bear this burden only if the sequential evaluation process proceeds to the fifth step. The claimant first must bear the burden . . . of showing that . . . he has a medically severe impairment or combination of impairments . . . . If the process ends at step two, the burden of proof never shifts to the Secretary. . . . It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.

Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

13

Although the ALJ has a duty to fully and fairly develop the record, he is not required to act as plaintiff's counsel. Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994). Claimant bears the burden of establishing a prima facie entitlement to benefits. See Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); 42 U.S.C.A. § 423(d)(5)(A)("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.") Similarly, he "bears the risk of non-persuasion." Seacrist v. Weinberger, 538 F.2d 1054, 1056 (4th Cir. 1976).

The undersigned finds unavailing Claimant's argument that medical expert testimony was required to determine her onset date of disability; Claimant asserted that the date was August 1, 2001, the ALJ adopted Claimant's alleged onset date, and Claimant does not now dispute the onset date. Because the ALJ failed to consider Claimant's obesity impairment, however, the Commissioner may find on remand that medical expert testimony is needed to determine whether the combination of Claimant's knee and back impairments with her obesity imposed more than minimal limitations on her ability to function.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the District Court **GRANT** Plaintiff's Motion for Judgment on the Pleadings, **DENY** the Defendant's Motion for Judgment on the Pleadings, **VACATE** the final decision of the Commissioner, **REMAND** this matter for further proceedings consistent with this Proposed Findings and Recommendation pursuant to the fourth sentence of 42 U.S.C. § 405(g), and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and

72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Johnston, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

Date: July 31, 2006.

R. Clarke VanDervort
United States Magistrate Judge